UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

NICOLE DESIMONE,

        Plaintiff,

v.                               Case No. 3:20-cv-1242-TJC-MCR

FLAGLER COUNTY, et al.,

        Defendants.

_____

## **ORDER**

Plaintiff, Nicole DeSimone, a former inmate at the Flagler County Jail, initiated this action, through counsel, by filing a Civil Rights Complaint (Doc. 1) under 42 U.S.C. § 1983. DeSimone is proceeding on a Corrected First Amended Complaint (Doc. 41; Amended Complaint) against the following Defendants: (1) Flagler County; (2) Rick Staly, Flagler County Sheriff; (3) Steve Cole, Chief of Court and Detention Services; (4) Becky Quintieri, former Director of the Flagler County Jail;[1] (5) Correctional Officer Bradley Gilyard; and (6) Correctional Officer Jonathan Vitale.[2] Id. at 2-4.

_____

[1] In the Amended Complaint, DeSimone names Cole and Quintieri as Chief Correctional Officers, but the record reveals their correct titles.

[2] DeSimone also named Correctional Officer Julio Vazquez as a Defendant, but the Court dismissed DeSimone's claims against Vazquez and terminated him as a Defendant. (Doc. 87).

This matter is before the Court on Defendant Staly's Motion for Summary Judgment (Doc. 94) with exhibits (Docs. 94-1 through 94-52); Defendant Cole's Motion for Summary Judgment (Doc. 95) with exhibits (Docs. 95-1 through 95-52); Defendant Quintieri's Motion for Summary Judgment (Doc. 96) with exhibits (Docs. 96-1 through 96-52); and Defendant Flagler County's Motion for Summary Judgment (Doc. 97) with exhibit (Doc. 97-1).[3] Plaintiff DeSimone filed a Response in opposition to each Motion (Docs. 102, 103, 104, 105) with exhibits (Docs. 102-1 through 102-13; 103-1 through 103-13; 104-1 through 104-13; 105-1 through 105-13). Staly, Cole, Quintieri, and Flagler County each filed a Reply. (Docs. 106, 107, 108, 111). The Motions are ripe for review.

## I.    BACKGROUND

DeSimone was an inmate at Flagler County Jail from November 2016 to January 2017. (Doc. 94-50 at 23:19-24:10, 27:17-28:1). Staly became Sheriff of Flagler County in January 2017. (Doc. 94-34 at 12:4-10). Quintieri was the Director of the Jail until December 2016. (Doc. 94-8 at 11:11-25). In January 2017, Cole replaced Quintieri and the position was given a new title: Chief of

---

[3] Defendant Gilyard filed an Answer but did not file any dispositive motions. (Doc. 52). Defendant Vitale did not file an Answer and the Clerk entered default against him. (Doc. 21).

Court and Detention Services. (Docs. 94-34 at 12:4-10; 94-8 at 11:19-22).

DeSimone alleges that during her incarceration, multiple correctional officers including Gilyard, Vazquez, and Vitale engaged in sexual misconduct with DeSimone and other inmates. (Doc. 41 ¶¶ 26-28, 32-37). On January 16, 2017, Gilyard sexually assaulted DeSimone. (Docs. 94-50 at 26:14-23; 102-2 at 6:6-7:1).[4] The assault occurred in the Jail laundry room in a "blind spot" that was not visible through the Jail's cameras. (Docs. 94-7 at 10; 94-13 at 18:17-24, 25:25-26:18; 94-14; 102-2 at 13:19-14:14).

In the Amended Complaint, DeSimone raises eleven Counts for relief. (Doc. 41). The only Counts at issue for purposes of this Order are: (Count IV) Flagler County, Staly, Cole,[5] and Quintieri, in their official capacities, violated DeSimone's Eighth and Fourteenth Amendment rights under 42 U.S.C. § 1983; (Count V) Cole and Quintieri, in their individual capacities, violated

---

[4] Staly, Cole, Quintieri, and Flagler County do not deny that Gilyard had sex with DeSimone. (Docs. 94 ¶ 17; 95 ¶ 17; 96 ¶ 17; 97 at 3). However, they argue that the sexual assault was consensual (Docs. 94 ¶ 16; 95 ¶ 16; 96 ¶ 16; 97 at 3) while also acknowledging that an inmate cannot legally consent to sexual misconduct in Florida. (Docs. 94 ¶ 12; 95 ¶ 12; 96 ¶ 12; 97 at 3). Thus, it is undisputed that Gilyard sexually assaulted DeSimone.

[5] Throughout the Amended Complaint, DeSimone references Defendants Staly, Stone, and Quintieri. (Doc. 41 ¶¶ 20-22, 29, 51). The Court assumes that this was a typographical error and that DeSimone intended to name Cole, not Stone, in these paragraphs.

DeSimone's Eighth and Fourteenth Amendment rights under 42 U.S.C. § 1983; (Count VIII) Flagler County and Staly, in his official capacity, are vicariously liable for civil assault under Florida Statutes section 768.28(9)(a); (Count IX) Flagler County and Staly, in his official capacity, are vicariously liable for civil battery under Florida Statutes section 768.28(9)(a); and (Count X) Flagler County and Staly, in his official capacity, are vicariously liable for negligence under Florida Statutes section 768.28(9)(a). The pending Motions seek summary judgment on each of these counts.

## II.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Further, the Court will construe all evidence in a light most favorable to DeSimone. See Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1098 (11th Cir. 2014).

## III.   SUMMARY OF MOTIONS

Staly argues he is entitled to summary judgment on the official capacity claims against him because: (1) DeSimone fails to establish an Eighth or Fourteenth Amendment violation; (2) failure to follow federal PREA standards does not amount to a constitutional violation; and (3) DeSimone has failed to establish the requisite liability for her state law claims against Staly. See generally Doc. 94.

Cole argues he is entitled to summary judgment as to the claims against him because: (1) he is entitled to qualified immunity as to the individual capacity claim against him; (2) any official capacity claim against him should be treated as a claim against the municipality; (3) he is entitled to Eleventh Amendment immunity in his official capacity as an arm of the state; (4) DeSimone fails to establish an Eighth or Fourteenth Amendment claim against him; and (5) failure to follow federal PREA standards does not amount to a constitutional violation. See generally Doc. 95.

Quintieri argues she is entitled to summary judgment as to the claims against her because: (1) she is entitled to qualified immunity as to the individual capacity claim against her; (2) any official capacity claim against her should be treated as a claim against the municipality; (3) she is entitled to

Eleventh Amendment immunity in her official capacity as an arm of the state; (4) DeSimone fails to establish an Eighth or Fourteenth Amendment claim against her; and (5) failure to follow federal PREA standards does not amount to a constitutional violation. <u>See generally</u> Doc. 96.

Flagler County argues it is entitled to summary judgment on the claims against it because: (1) the Sheriff and his employees are not agents of the County; (2) DeSimone fails to establish municipal liability under § 1983 against Flagler County; (3) the assault and battery counts fail because Defendant Vazquez was employed by the Sheriff, not Flagler County; (4) Defendant Vazquez was not acting within the scope of his employment; (5) Flagler County owed no legal duty in negligence to DeSimone; and (6) even if it did owe DeSimone a duty, it is entitled to sovereign immunity. <u>See generally</u> Doc. 97.

## IV.   DISCUSSION

### A. Count IV: Flagler County and Staly, Cole, and Quintieri, in their official capacities, violated DeSimone's Eighth and Fourteenth Amendment rights under 42 U.S.C. § 1983

DeSimone alleges in Count IV that Flagler County and Staly, Cole and Quintieri, in their official capacities, had a series of "established practices, customs, policies, and protocols" that violated her Eighth and Fourteenth

Amendment rights. (Doc. 41 ¶¶ 84-86). Specifically, these practices, customs, policies, and protocols consisted of: (1) violating Defendants' own policies regarding the prevention of sexual misconduct by correctional officers; (2) placing male correctional officers "in a position to exercise total sexual domination over female inmates"; (3) "creating and operating a system of surveillance security cameras with known blind spots and deficiencies that created opportunities for sexual harassment, sexual misconduct, and sexual abuse of inmates by correctional officers"; (4) ignoring, disregarding, or turning a blind eye to ongoing sexual harassment of female inmates and failing to watch for harassment on the Jail's surveillance system; (5) failing to train and/or supervise Jail staff to recognize and report sexual misconduct; and (6) failing to train and/or supervise Jail supervisors to recognize and report sexual misconduct. Id. ¶ 86. DeSimone alleges that these practices, customs, policies, and protocols "encouraged and failed to prevent the continued unlawful sexual harassment, sexual misconduct, and sexual abuse of Ms. DeSimone by Defendants Gilyard, Vitale, and Vazquez." Id. ¶ 87.

### 1.  Cole and Quintieri in their Official Capacities

Cole and Quintieri, current and former Jail leadership, are entitled to summary judgment on DeSimone's official capacity claims against them in

7

Count IV because they are redundant Defendants. Suits against municipal officers sued in their official capacities are "functionally equivalent" to suits against municipalities. Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991). Since DeSimone sues Cole and Quintieri in their official capacities as well as the municipality that employs them, it would be "redundant and possibly confusing to the jury" to allow DeSimone's official capacity claims against Cole and Quintieri to proceed. Id.; see also Abusaid v. Hillsborough Cnty. Bd. Of Cnty. Comm'rs, 405 F.3d 1298, 1302 n.3 (11th Cir. 2005) (noting that when employees are sued in their official capacity along with the municipality that employs them, the employer is the proper party to the action). Thus, Cole and Quintieri are entitled to summary judgment on the official capacity claims against them in Count IV.

## 2. **Staly and Flagler County as Co-Defendants**

Before getting to the merits of Sheriff Staly's and Flagler County's Motions, the Court must address Staly and Flagler County's status as co-defendants. Staly is sued only in his official capacity. Typically, an official-capacity suit is to be treated as a suit against the government entity of which the officer is an agent. See Kentucky v. Graham, 473 U.S. 159, 165-66 (1985). However, the law appears unsettled on which entity a Florida sheriff

represents. See Brown v. Neumann, 188 F.3d 1289, 1290 n.2 (11th Cir. 1999) ("We recognize that our decisions have not been entirely consistent on whether the relevant entity in an official-capacity suit against a sheriff in Florida is the County or the Sheriff's Department (as a unit operating autonomously from the County)."); see also Race v. Bradford Cnty., No. 3:18-cv-153-J-39PDB, 2019 WL 7482235, at *28 (M.D. Fla. Aug. 20, 2019) ("[T]he issue [of who is responsible for a county jail] divides courts.") (collecting cases), report and recommendation adopted as modified, 2019 WL 7482213 (M.D. Fla. Sept. 26, 2019); see also C.P. by and through Perez v. Collier Cnty., 145 F. Supp. 3d 1085, 1097 (M.D. Fla. 2015) ("Determining the entity a Florida sheriff represents in a section 1983 official capacity suit has proven problematic."). Thus, when misconduct occurs in a county jail, it is unclear if the sheriff is liable as an agent of "the Sheriff's Office as an autonomous unit of county government, or the county, or the State of Florida, or some combination." C.P., 145 F. Supp. 3d at 1097.

When it is uncontested that a county is in charge of the county jail, the Eleventh Circuit has held that an action against the county sheriff in his official capacity is, "in essence," a suit against the county. Ireland v. Prummell, 53 F.4th 1274, 1288 (11th Cir. 2022); see also Barnett v. MacArthur, 956 F.3d 1291, 1296 (11th Cir. 2020) ("The detention claim against the Sheriff in his official

capacity is in effect a claim against Seminole County.") However, that is not the case here. Staly and Flagler County have retained separate counsel and regard each other as separate entities. Flagler County bases its summary judgment arguments on the notion that the County and Sheriff are "subject to separate analyses." (Doc. 97 at 7). Staly, on the other hand, does not specifically make this argument, but notes that "[t]he building that houses the jail and the camera system are owned by Flagler County, not the Sheriff's Office," and places the blame for lack of camera funding on Flagler County. (Doc. 94 ¶¶ 24, 28). DeSimone asserts that both the Sheriff and the County are liable, rather than one or the other, because "[t]he Sheriff operates the jail on behalf of the County." (Doc. 103 at 5-6).

Flagler County's argument involves "complex issues of state law." Race, 2019 WL 7482235, at *22, *28. Yet Flagler County cites no case law in its Motion to support its assertion that Staly is not an agent of Flagler County for the purposes of official capacity claims. See generally Doc. 97. Flagler County only references Article VIII of the Florida Constitution and Florida Statutes section 30.53 to assert that Florida sheriffs are constitutionally independent from Florida county commissioners (Doc. 97 at 4, 6), but this does not address who is responsible for the jails. It is undisputed that Flagler County delegated the

operation of the Flagler County Jail to the Flagler County Sheriff's Office. (Docs. 97 at 2, 4-5; 103 at 6 n.14). However, it remains unclear if Staly, as Sheriff, had final policymaking authority for the Jail on behalf of the Sheriff's Office or on behalf of Flagler County, or if the two entities share responsibility for the customs or policies that DeSimone alleges led to the deprivation of her constitutional rights.[6] See McMillian v. Johnson, 88 F. 3d 1573, 1578 (11th Cir. 1996) ("An official or entity may be a final policymaker with respect to some actions but not others. With respect to a particular action, more than one official or body may be a final policymaker; final policymaking authority may be shared." (citations omitted)), aff'd sub nom. McMillian v. Monroe Cnty., 520 U.S. 781 (1997).

Accordingly, because it is unclear whether the official capacity claims against Staly are the same as those against Flagler County, Flagler County is not entitled to summary judgment on the claims against it in Count IV.

---

[6] The Supreme Court provides, "the identification of those officials whose decisions represent the official policy of the local governmental unit is itself a legal question to be resolved by the trial judge before the case is submitted to the jury." Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737, (1989). Accordingly, the Court recognizes that this issue may need to be resolved before trial.

### 3. **§ 1983 Municipal Liability Analysis**

Staly and Flagler County argue they are entitled to summary judgment on DeSimone's Eighth and Fourteenth Amendment claims because she fails to establish the required municipal liability. (Docs. 94 at 15-19; 97 at 7-9). In response, DeSimone lists a series of customs and policies as grounds for Staly and Flagler County's municipal liability. (Docs. 102, 103).[7]

Although municipalities may be sued under § 1983, they cannot be held vicariously liable for their employees' actions. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). Rather, the municipality itself must cause the purported § 1983 violation. City of Canton v. Harris, 489 U.S. 378, 385 (1989). Thus, "to impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004).

The first prong of the municipal liability analysis requires DeSimone to

---

[7] In the Amended Complaint, DeSimone alleges that her Eighth and Fourteenth Amendment rights were violated. (Doc. 41 ¶¶ 2, 85, 86, 95, 96). However, in her Responses to each Motion for summary judgment, she only mentions her Eighth Amendment rights. (Docs. 102, 103, 104, 105). Thus, DeSimone appears to abandon her Fourteenth Amendment claim.

12

show that her constitutional rights were violated. Id. DeSimone satisfies this prong because it is undisputed that Gilyard sexually assaulted her. See supra, n.4. "In a case brought by a prisoner alleging sexual assault by a prison official, that sexual assault necessarily violates the Eighth Amendment." DeJesus v. Lewis, 14 F.4th 1182, 1196 (11th Cir. 2021).

The second prong requires DeSimone to show "that the municipality had a custom or policy that constituted deliberate indifference" to her constitutional right. McDowell, 392 F.3d at 1289. "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality. . . . A custom is a practice that is so settled and permanent that it takes on the force of law." Cooper v. Dillon, 403 F.3d 1208, 1221 (11th Cir. 2005) (quoting Sewell v. Town of Lake Hamilton, 117 F.3d 488, 489 (11th Cir. 1997)). "'Proof of a single incident of unconstitutional activity is not sufficient to impose liability' on a governmental entity as part of either a policy or custom unless the challenged policy itself is unconstitutional." Ireland, 53 F.4th at 1289 (quoting City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985) (plurality opinion)). A custom or policy is deliberately indifferent to a constitutional right when a "plainly obvious consequence" of the custom or policy is a violation of a

constitutional right. <u>Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown</u>, 520 U.S. 397, 411 (1997). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." <u>Id.</u> at 410.

DeSimone was housed in a new addition to the Flagler County Jail that opened in the summer of 2016. (Doc. 94-8 at 31:5-32:9, 68:3-11). When the security cameras were installed in the new addition to the Jail, Sergeant Davis (now Commander Davis) noticed some areas in the Jail did not have adequate camera coverage. (Doc. 94-35 at 17:8-18). On June 5, 2016, Davis wrote a memo to Quintieri listing these problematic areas, including the new laundry room. (Doc. 94-36). Davis noted that these areas needed new cameras installed "for the safety and security of the staff and inmates in our custody." <u>Id.</u> Davis also wrote, "I believe not adding theses camera [sic] in the areas I have listed below will make for an unsafe work environment due to the lack of coverage with the new cameras that were installed." <u>Id.</u> Five days later, on June 10, 2016, Davis wrote Quintieri another memo about the cameras that highlighted "the main priorities that need to be addressed right now." (Doc. 94-37). The new laundry room was on this high priority list. <u>Id.</u> However, Flagler County decided not to augment the camera system to provide coverage for the blind spot in the

14

laundry room or any of the other blind spots in the Jail. (Doc. 94-33 at 51:3-7).

There is a disputed issue of fact about whether the decision not to correct the blind spots constituted deliberate indifference to DeSimone's constitutional rights as an inmate. Staly asserts that "it cannot be said that the Sheriff had proper notice of a substantial risk" because the laundry room was new, no incidents had happened there before, no incidents had been reported against Gilyard, and there were policies in place to prevent corrections officers from sexually assaulting inmates. (Doc. 94 at 13, 19). However, Davis's memo establishes that prison officials knew that the camera blind spot in the laundry room created a safety risk for inmates. (Doc. 94-36). Thus, the record contains sufficient evidence that harm befalling an inmate in the laundry room was a "plainly obvious consequence" of the decision to not add cameras to correct the blind spots. <u>Brown</u>, 520 U.S. at 411. Although prison officials may not have specifically known that Gilyard would sexually assault DeSimone, "an official need not have knowledge of the precise risk that ultimately materializes; awareness of 'an obvious, substantial risk to inmate safety' is enough." <u>Rogers v. Sheriff of Santa Rosa Cnty.</u>, No. 21-13994, 2023 WL 2566087, at *6 (11th Cir.

Mar. 20, 2023) (quoting <u>Farmer v. Brennan</u>, 511 U.S. 825, 843 (1994)). [8]

Additionally, Staly argues that prison officials adequately responded to the risks posed by the blind spots because "Commander Davis drafted memos, Director Quintieri was made aware of the situation, estimates were provided, and requests for funding were made to the County to get the additional equipment needed." (Doc. 94 at 19). The reason Flagler County decided not to augment the camera system is disputed. Jerrod Shupe, a 30(b)(6) witness for Flagler County, testified that that the cameras were not added to correct the blind spots due to lack of funding. (Doc. 94-33 at 50:2-51:11). On the other hand, Cole testified that Quintieri told him the new cameras were not installed because "the County was so fed up with the previous sheriff, that they really weren't doing anything until the new sheriff took office." (Doc. 94-34 at 39:11-18). Ultimately, "[w]hether or not [Staly and Flagler County] failed to install more cameras out of deliberate indifference or lack of funding is a genuine issue of material fact to be considered by a jury." <u>Tafoya v. Salazar</u>, 516 F.3d 912, 920 (10th Cir. 2008).

---

[8] The Court does not rely on unpublished opinions as binding precedent, however, they may be cited when the Court finds them persuasive on a particular point. <u>See</u> <u>McNamara v. GEICO</u>, 30 F.4th 1055, 1060-61 (11th Cir. 2022).

Finally, to satisfy the third prong of a § 1983 municipal liability claim, DeSimone must show that the Jail's policy or custom caused her sexual assault. McDowell, 392 F.3d at 1289. "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell, 436 U.S. at 694. The government's official policy or custom must be the "moving force" behind the constitutional violation. Id.; see also Brown, 520 U.S. at 404 (stating that a municipality, through its deliberate conduct, must be the "moving force" behind an alleged injury for § 1983 liability).

Staly and Flagler County seem to argue that there is no record evidence that the blind spots in the Jail caused Gilyard to sexually assault DeSimone. They contend that "[t]hough blind spots exist, there were rules and policies for officers and staff to follow to avoid situations where an assault could occur. If Deputy Gilyard had followed the order and procedures in place, the allegations in this case would have never occurred." (Docs. 94 ¶ 30; 97 at 3) (citations omitted). However, DeSimone provides evidence that Gilyard intentionally used the blind spots to sexually assault her. Deputies Haggerty and Vazquez stated in their respective Florida Department of Law Enforcement interviews

following the sexual assault of DeSimone that they heard Gilyard talk about the laundry room blind spot. (Doc. 94-7 at 18-19, 35). In her sworn statement, Margaret Tillman, who was incarcerated at the Flagler County Jail at the same time as DeSimone, stated that Gilyard tried to lure inmates into blind spots. (Doc. 94-51 at 6:13-7:19, 11:4-22). Also, the video footage of the laundry room during DeSimone's sexual assault shows DeSimone walking out of camera view before she is assaulted by Gilyard. (Doc. 94-14). Thus, there is a disputed issue of fact about whether the laundry room blind spot was the moving force behind Gilyard sexually assaulting DeSimone. A reasonable jury could infer that but for the blind spot, Gilyard would not have sexually assaulted DeSimone.

The Court now briefly turns to the other alleged customs and policies that DeSimone highlights to establish municipal liability. In the Amended Complaint, in addition to the camera blind spot issue, DeSimone alleges that Staly, in his official capacity as Sheriff of Flagler County: (1) permitted Jail staff to violate the Jail's policies on preventing sexual misconduct by correctional officers; (2) placed male correctional officers "in a position to exercise total sexual domination over female inmates"; (3) ignored the ongoing sexual harassment of female inmates and failed to watch for harassment on the Jail's surveillance system; and (4) failed to train and supervise Jail staff and

18

supervisors to recognize and report sexual misconduct. (Doc. 41 ¶ 86).

In his Motion, Staly provides ample evidence of the Jail's policies and training programs regarding the prevention of sexual assault. (Docs. 94-1 through 94-3, 94-5, 94-16 through 94-29). DeSimone responds with Vitale's sworn statement that the only PREA (Prison Rape Elimination Act) training he received as a correctional officer at Flagler County Jail was a packet to read, and no one ensured he read it.  (Doc. 102-1 at 30:9-32:2).

Staly also provides evidence, via testimony of 30(b)(6) witness Althea Civil, that, contrary to DeSimone's allegations, female inmates could shower and dress out of view of male officers.  Civil testified that although male correctional officers could possibly see into female inmates' showers and cells from the second-floor control room, female inmates were permitted to use shower curtains in the shower and hang a sheet or jumper for privacy in their cells. (Doc. 94-5 at 149:12-152:12). In response, DeSimone asserts via Tillman's sworn statement that some of the showers did not have curtains, and correctional officers would make inmates open the curtains in showers that did have them. (Doc. 94-51 at 19:5-20:15). Additionally, DeSimone provides expert testimony of Richard Hough that allowing inmates to hang items to block the view into their cell "would not be normal or acceptable anywhere." (Doc. 102-13

at 105:15-106:15).

However, while DeSimone provides her own testimony and Tillman's sworn statements about widespread sexual harassment and abuse in the Jail as a result of these policies or customs (Docs. 94-50 at 113:9-14, 117:13-20, 145:3-11, 149:14-22; 94-51 at 13:20-22:3, 23:22-24:9, 58:16-60:10), she fails to provide any evidence that Staly or any other Jail supervisor knew it was happening. (Docs. 94-50 at 112:12-20, 113:17-21, 117:21-23, 118:6-21, 156:24-157:20, 205:12-17, 282:15-283:6, 286:7-11; 94-51 at 22:4-23, 40:9-15). This lack of knowledge weakens DeSimone's assertion that Jail officials were deliberately indifferent to the known or obvious consequences of their actions.

Although DeSimone's municipal liability claim based on these customs or policies is weaker than her camera blind spot claim, in totality, DeSimone's municipal liability claim is enough to survive summary judgment. Accordingly, Staly and Flagler County are not entitled to summary judgment on the official capacity claims against them in Count IV.

### B. Count V: Cole and Quintieri, in their individual capacities, violated DeSimone's Eighth and Fourteenth Amendment rights under 42 U.S.C. § 1983

DeSimone alleges in Count V that Cole and Quintieri, in their individual capacities, violated DeSimone's Eighth and Fourteenth Amendment rights.

20

(Doc. 41 ¶¶ 92, 94, 95). DeSimone lists the same "practices, customs, policies, and protocols" as she does in Count IV, but in Count V she describes them as "acts committed by and/or attributable to" Cole and Quintieri. Id. ¶ 96. Both Cole and Quintieri argue that they are entitled to summary judgment on DeSimone's individual capacity claims against them because they cannot be held liable based on respondeat superior and they are entitled to qualified immunity. (Docs. 95 at 15, 17; 96 at 15, 17).

"[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Myrick v. Fulton Cnty., 69 F.4th 1277, 1297 (11th Cir. 2023) (quoting Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003)). Instead, a supervisor can be liable only when that supervisor "personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." Id. The record does not contain any evidence that Cole or Quintieri personally participated in DeSimone's sexual abuse. In fact, DeSimone admits that she did not know who Cole or Quintieri were before filing her lawsuit. (Doc. 94-50 at 44:3-19). Thus, DeSimone must allege facts that show there was a causal connection between the actions of Cole and/or Quintieri and her sexual

21

assault.

> [DeSimone] can meet that extremely rigorous challenge in several
> ways. A causal connection may be established when: (1) a history of
> widespread abuse puts the responsible supervisor on notice of the
> need to correct the alleged deprivation, and he or she fails to do so;
> (2) a supervisor's custom or policy results in deliberate indifference
> to constitutional rights; or (3) facts support an inference that the
> supervisor directed subordinates to act unlawfully or knew that
> subordinates would act unlawfully and failed to stop them from
> doing so.

Myrick, 69 F.4th at 1298 (quoting Mathews v. Crosby, 480 F.3d 1265, 1270 (11th

Cir. 2007)). "The deprivations that constitute widespread abuse sufficient to

notify the supervising official must be obvious, flagrant, rampant and of

continued duration, rather than isolated occurrences." Keith v. DeKalb Cnty.,

749 F.3d 1034, 1048 (11th Cir. 2014) (quoting Hartley v. Parnell, 193 F.3d 1263,

1269 (11th Cir. 1999)).

DeSimone does not argue that Cole or Quintieri directed officers to act

unlawfully or knew that they would act unlawfully and failed to stop them from

doing so. Instead, she argues that the evidence demonstrates the other two

approved methods for showing the requisite causal connection. See generally

Docs. 104, 105. The Court considers the record as to Cole and Quintieri in turn

and finds that both are entitled to summary judgment on the claims against

them in Count V.

22

## 1. **Cole**

Cole testified that Staly offered Cole his new position at the Jail on December 26, 2016. (Doc. 94-34 at 13:12-14:4). He officially became the new Chief of Court and Detention Services on January 3, 2017. Id. at 12:4-10. This was thirteen days before DeSimone was sexually assaulted on January 16, 2017. (Doc. 94-50 at 26:14-23). Before his appointment to Director, Cole had never had a position on the detention side of law enforcement. (Doc. 94-34 at 12:11-20). Thus, Cole had not been at the Jail long enough to know of any widespread sexual misconduct. Nor was Cole at the Jail long enough to enact any customs or policies. Finally, regarding the cameras, Cole testified that he did not learn about the laundry room blind spot until his second week in office. Id. at 25:5-26:21.

In her Response, DeSimone asserts various low-cost methods Cole could have used to fix the laundry room blind spot and that even though Cole had "only been in his position for a few weeks at the time of the rape, he was well aware of the blind spots and did nothing to mitigate the risk himself." (Doc. 105 at 5, 19.) DeSimone's Response is insufficient to establish a genuine issue of material fact. The Court finds that no reasonable jury could find a causal connection between Cole's actions during his first two weeks at the Jail and

DeSimone's sexual assault. Thus, DeSimone fails to establish a causal connection for purposes of demonstrating supervisory liability. Accordingly, Cole is entitled to summary judgment on the individual capacity claim against him in Count V.

## 2. Quintieri

Quintieri argues there is a lack of evidence that there was a history of widespread abuse that put her on notice of the need to correct the alleged deprivation, and she failed to do so. Myrick, 69 F.4th at 1298. The record does not indicate how many documented incidents of sexual assault occurred at the Jail during Quintieri's tenure.[9] In her Response, DeSimone attempts to present evidence that there were incidents of sexual abuse at the Jail that Jail officials

_____

[9] Quintieri asserts that in addition to DeSimone's sexual assault, there were two other allegations of sexual misconduct in the Jail over a three-to-five-year period. (Confusingly, Quintieri describes this period both as a five-year period and as a period ranging from 2012 to 2015. (Doc. 96 ¶ 8)). In support of this assertion, she cites to pages 214 and 215 of Althea Civil's deposition. Id. However, Althea Civil's deposition only has 189 pages, and this information is not found within those pages. See generally Doc. 96-5. In her Response, DeSimone adopts Quintieri's assertion without providing any evidence of the number of reported sexual assaults at the Jail. (Doc. 104 at 11). Regardless, this small number of reported incidents is insufficient to prove obvious, flagrant, and rampant abuse. See Hawk v. Klaetsch, 522 F. App'x 733, 735 (11th Cir. 2013) ("We fail to see how three incidents over the span of nearly five years can constitute frequent, widespread, or rampant abuse.").

knew about but did not officially document. (Doc. 104 at 11-13). DeSimone points to nationwide statistics of inmate sexual assault to assert that Jail officials are undercounting sexual assaults at the Jail. Id. at 11. However, DeSimone presents no evidence to support this claim, so the Court does not consider it. See BVS Acquisition Co., LLC v. Brown, 649 F. App'x 651, 659 (11th Cir. 2016) ("[M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion.") (quoting Ellis v. England, 432 F.3d 1321, 1327 (11th Cir. 2005)). Additionally, DeSimone cites news articles (Docs. 104-3, 104-4) and a vague email (Doc. 104-5) to assert that there were at least three incidents that Jail officials knew about but did not disclose.[10] (Doc. 104 at 12-13). DeSimone acknowledges that the news articles are hearsay and does not identify an exception. (Doc. 104 at 12 n.73). Thus, "the Court may not consider the news articles for the truth of the matters asserted therein." Poulin v. Bush, No. 8:21-cv-1516-WFJ-AEP, 2023 WL 185122, at *19, --- F. Supp. 3d --- (M.D. Fla. Jan. 13, 2023). Finally, it is unclear what the email is about, and DeSimone does not explain it. (Doc. 104-5). Thus, none of this evidence is sufficient to create a genuine issue of material fact regarding

---

[10] DeSimone also references an investigation into a relationship between an officer and an inmate that began in January 2017, but this occurred when Quintieri was no longer Director of the Jail.

whether Quintieri should have known about a history of widespread abuse.

Tillman provided a sworn statement and DeSimone testified in her deposition about sexual harassment and abuse they personally experienced (in addition to the rape of DeSimone). (Docs. 94-51 at 13:20-22:3, 23:22-24:9, 58:16-60:10; 94-50 at 113:9-14, 117:13-20, 145:3-11, 149:14-22). However, DeSimone does not point to any evidence that Quintieri was aware of the abuse to which she and Tillman testified. Indeed, Tillman stated that the officers hid their behavior from their supervisors and DeSimone testified that she never reported her abuse while she was incarcerated nor did any supervisors witness her abuse. (Docs. 94-51 at 22:4-23, 40:9-15; 94-50 at 112:12-20, 113:17-21, 117:21-23, 118:6-21, 156:24-157:20, 205:12-17, 282:15-283:6, 286:7-11). Thus, DeSimone has not presented sufficient evidence to establish a triable issue on this theory of liability. See Keith, 749 F.3d at 1049 ("While [Jail employee] may have acted contrary to the Jail policy, [Plaintiff] presents no evidence that this was a widespread problem or that [Defendant] was aware that employees routinely violated the policy and that [she] failed to correct the problem.").

"The last remaining avenue for establishing a causal connection is to show a custom or policy that resulted in deliberate indifference to [DeSimone's] constitutional rights." Myrick, 69 F.4th at 1298. In an individual capacity

context, "[d]eliberate indifference requires the following: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." Keith, 749 F.3d at 1047 (quoting Franklin v. Curry, 738 F.3d 1246, 1250 (11th Cir. 2013)).

DeSimone alleges that Quintieri had the same customs or policies as those alleged against Staly and Flagler County. (Doc. 41 ¶ 96). However, DeSimone has not presented sufficient evidence that Quintieri had subjective knowledge that correctional officers were violating policies (Id. ¶ 96(a)), or that correctional officers were "exercising total sexual domination over female inmates" (Id. ¶ 96(b)), or that Quintieri was ignoring harassment observable on the Jail's security system. Id. ¶ 96(d). To the extent that DeSimone has shown that Quintieri knew that male guards could see female inmates showering and dressing, she has not created an issue of fact regarding causation.

Quintieri did know about the camera issue (Doc. 41 ¶ 96(c)), but DeSimone has not presented evidence that Quintieri was deliberately indifferent to the camera blind spots. Rather than disregarding the risk presented by the blind spots, Quintieri testified that she requested an estimate from IT to install new cameras as soon as she was made aware of the issue. (Doc. 96-8 at 102:23-103:18). Once she received the estimate and submitted it the undersheriff, the

27

project was out of her hands. Id. at 126:11-127:20. DeSimone does not dispute that Quintieri requested an estimate and submitted it up the chain of command. Instead, she argues that Quintieri should have done more, such as request the camera lenses be changed, and in response to the delay from the County, Quintieri should have mitigated the risk herself. (Doc. 104 at 6, 19). However, as Quintieri points out in her Reply, DeSimone "provides no evidence that modifying the lens[es] would have even fixed the blind spot." (Doc. 108 at 5). Additionally, according to Shupe, the County, not Quintieri, controlled the funding for the camera system, so she could not fix the cameras herself. (Doc. 94-33 at 52:18-53:5). Thus, there is no genuine dispute of material fact that Quintieri disregarded the risk posed by the camera blind spots by conduct amounting to more than gross negligence.

Finally, DeSimone does not present sufficient evidence permitting the reasonable inference that Quintieri failed to properly train and/or supervise staff and supervisors to "recognize and report warning signs, policy/custom violations, sexual harassment, sexual misconduct, and sexual abuse" of Gilyard, Vitale, and Vazquez. (Doc. 41 ¶ 96(e-f)). This claim "implicates a different, albeit very similar, rule: under § 1983, a supervisor can be held liable for failing to train his or her employees 'only where the failure to train amounts to deliberate

28

indifference to the rights of persons with whom the [officers] come into contact.'"

Keith, 749 F.3d at 1052 (quoting City of Canton, 489 U.S. at 388)).

> Thus, a plaintiff alleging a constitutional violation premised on a failure to train must demonstrate that the supervisor had "actual or constructive notice that a particular omission in their training program causes [his or her] employees to violate citizens' constitutional rights," and armed with that knowledge the supervisor chose to retain the training program.

> To establish that supervisor was on actual or constructive notice of the deficiency of training, "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary."

Id. at 1052-53 (quoting Connick v. Thompson, 563 U.S. 51, 61 (2011)). "A [supervisor's] culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Id. at 1053.

The only training that DeSimone mentions in her Response to Quintieri's Motion is PREA training. (Doc. 104 at 8, 14). The parties dispute the quantity and quality of PREA training given to Jail staff. (Docs. 96 ¶¶ 1-10; 104 at 8.) However, regardless of any omissions in Quintieri's PREA training program, Quintieri did not have actual or constructive notice that her employees were violating inmates' constitutional rights. Thus, DeSimone has not adequately established that Quintieri committed a constitutional violation by failing to train the detention officers at the Jail.

In sum, DeSimone fails to establish a causal connection for purposes of

demonstrating supervisory liability. Accordingly, Quintieri is entitled to summary judgment on the individual capacity claim against her in Count V.

### 3. **Qualified Immunity**

Cole and Quintieri also argue they are entitled to summary judgment on DeSimone's individual capacity claims against them because they are entitled to qualified immunity. (Docs. 95 at 15; 96 at 15.) Because the Court finds that DeSimone is unable to establish an individual capacity Eighth Amendment supervisory liability claim against either Cole or Quintieri, it need not address their qualified immunity arguments.

**C. Count VIII: Flagler County and Staly, in his official capacity, are vicariously liable for civil assault under Florida Statutes section 768.28(9)(a); And Count IX: Flagler County and Staly, in his official capacity, are vicariously liable for civil battery under Florida Statutes section 768.28(9)(a)**

DeSimone alleges in Counts VIII and IX that Staly and Flagler County are vicariously liable for the assault and battery committed by Vazquez on DeSimone under Florida Statutes section 768.28(9)(a). (Doc. 41 ¶¶ 111-21). She alleges that Vazquez was acting within the scope of his employment when he assaulted and battered her, but he did not act "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Id. ¶¶ 114, 120.

Under Florida's limited waiver of sovereign immunity, a municipality may be sued for torts committed by its employees within the scope of their employment as long as the employee did not act "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." FLA. STAT. § 768.28(1), (9)(a); see Richardson v. City of Pompano Beach, 511 So. 2d 1121, 1124 (Fla. 4th DCA 1987). However, the § 768.28 waiver of sovereign immunity does not apply if the "challenged acts of the state agent were 'discretionary' governmental acts rather than merely 'operational' ones." Lewis v. City of St. Petersburg, 260 F.3d 1260, 1262 (11th Cir. 2001).

Flagler County argues that it is not liable for Vazquez's torts because Vazquez was an employee of the Sheriff's Office, not the County, and, regardless of who employed Vazquez, sexual assault and battery are not within the scope of employment. (Doc. 97 at 6-7, 9-11). Staly also argues that the Sheriff's Office cannot be liable because sexual assault and battery are not within the scope of employment. (Doc. 94 at 22-23). In Response, DeSimone argues that both the County and the Sheriff's Office are liable and that "questions of whether a governmental actor was acting outside the scope of his or her duties, or whether he or she was acting with bad faith and/or malicious purpose, are questions

properly reserved for the jury." (Docs. 102 at 19-20; 103 at 13, 15-17).

The Court does not need to address whether Vazquez was an employee of the Sheriff's Office or the County because he was not acting within the scope of his employment, no matter who employed him, when he sexually assaulted and battered DeSimone.[11]

> Under Florida law, scope of employment is determined according to a three part test: "An employee's conduct is within the scope of his employment only if it is the kind he is employed to perform, it occurs substantially within the time and space limits of the employment and it was activated at least in part by a purpose to serve the master."

Lawrence v. Dunbar, 919 F.2d 1525, 1528 (11th Cir. 1990) (quoting Rabideau v. State, 391 So. 2d 283, 284 (Fla. 1st DCA 1980), aff'd, 409 So. 2d 1045 (Fla. 1982)). "Whether a defendant was acting within the scope of his employment is a question of fact unless the evidence is such that there is only one conclusion the factfinder could reach." Desai v. Farmer, No. 5:12-cv-495-Oc-34PRL, 2014 WL 5474417, at *10 (M.D. Fla. Oct. 29, 2014) (citing Blount v. Sterling Healthcare Grp., Inc., 934 F. Supp. 1365, 1372 (S.D. Fla. 1996). Here, there is only one conclusion the factfinder could reach.[12]

---

[11]   Neither Staly nor Flagler County dispute that Vazquez assaulted and battered DeSimone.

[12] Even if it was a question of fact for the jury, DeSimone does not provide any evidence that Vazquez was acting within the scope of his employment.

"[S]exual misconduct by employees is generally held to be outside the scope of employment" because scope of employment "does not extend to cases in which 'the servant has stepped aside from his employment to commit a tort which the master neither directed in fact, nor could be supposed, from the nature of his employment, to have authorized or expected the servant to do.'" Carter v. Am. Online, Inc., 208 F. Supp. 2d 1271, 1279 (M.D. Fla. 2001) (quoting City of Green Cove Springs v. Donaldson, 348 F.2d 197, 202 (5th Cir. 1965)); see also Alexander v. United States, No. 21-13720, 2022 WL 17688692, at *8 (11th Cir. Dec. 15, 2022) ("Florida court [sic] have generally held sexual torts 'to be outside the scope of an employee's employment and, therefore, insufficient to impose vicarious liability on the employer.'") (quoting Goss v. Human Servs. Assocs., Inc., 79 So. 3d 127, 132 (Fla. 5th DCA 2012)). There is no indication that the Sheriff's Office or Flagler County directed Vazquez to sexually assault or batter DeSimone or that he was authorized or expected to do so as a correctional officer.

Since Vazquez's actions were not within the scope of his employment, the Court need not address whether Vazquez was acting with bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. Nor does the Court need to consider whether

Vazquez was exercising a discretionary or operational function. Accordingly, Staly and Flagler County are entitled to summary judgment on the claims against them in Counts VIII and IX.

### D. Count X: Flagler County and Staly, in his official capacity, are vicariously liable for negligence under Florida Statutes section 768.28(9)(a)

In Count X, DeSimone alleges that Staly and Flagler County are vicariously liable for the negligent acts of "[c]orrectional officers, including but not limited to Defendants [Vitale] and [Vazquez], and [Flagler County employees] who supervised and managed correctional officers, up to and including Defendants [Cole] and [Quintieri]" under Florida Statutes section 768.28(9)(a). (Doc. 41 ¶¶ 122-28). DeSimone alleges these employees "had a duty to use reasonable care to protect and safeguard the safety of inmates at the Flagler County Detention Center." Id. ¶ 123. DeSimone alleges these employees breached their duty to her by:

> a. failing to be aware of and watchful for improper sexual harassment, sexual misconduct, and sexual abuse of inmates by correctional officers, and to report said conduct to their superiors.
>
> b. failing to be aware of and watchful for improper brandishing of Tasers by correctional officers, and to report said conduct to their superiors,
>
> c. failing to monitor the system of surveillance security cameras for blind spots and deficiencies, and to report those blind spots and

34

deficiencies to their superiors.

<u>Id.</u> ¶ 126. DeSimone alleges this negligence was committed during the scope of the employees' employment and "was not committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." <u>Id.</u> ¶ 127. The Court considers the arguments of Flagler County and Staly in turn and finds that neither are entitled to summary judgment on the claims against them in Count X. [13]

### 1. <u>Flagler County</u>

Flagler County argues that it owed no legal duty to DeSimone because "it is erroneous to apply legal principles indiscriminately between the County and the Sheriff." (Doc. 97 at 11). Flagler County asserts it "neither brought [DeSimone] into custody nor had responsibility for her wellbeing during her incarceration." <u>Id.</u> Flagler County cites case law on the duty law enforcement owes inmates, but it cites no case law on the duty (or lack thereof) counties owe

---

[13] Count X differs from Counts VIII and IX because Counts VIII and IX are vicarious liability claims for Vazquez sexually assaulting and battering DeSimone, which was not within Vazquez's scope of employment. Count X is a vicarious liability claim for Jail employees negligently failing to watch for and report sexual harassment, improper Taser use, and camera blind spots, and no party disputes that these tasks are within the employees' scope of employment. Under Florida's limited waiver of sovereign immunity, Flagler County and Staly can only be vicariously liable for torts committed by their employees within the scope of their employment. FLA. STAT. § 768.28(9)(a).

to inmates in county jails. Given the conflicting positions of Flagler County and Staly on their responsibilities, Flagler County has not established that it did not owe a duty to DeSimone.

Similarly, citing no case law, Flagler County asserts "[t]here is no question that all [correctional officers], including Vazquez and Gilyard, were employed by the Sheriff." Id. at 6. Flagler County cites two sources for this proposition. One is Gilyard's deposition where he states he was employed by Flagler County Sheriff's Office. (Doc. 94-52 at 11:9-14). The other is Florida Statutes section 30.53, which provides "[t]he independence of the sheriffs shall be preserved concerning . . . selection of personnel, and the hiring, firing, and setting of salaries of such personnel." FLA. STAT. § 30.53. Neither source answers the question of whether the County or the Sheriff's Office are vicariously liable for the negligence of Jail employees. Thus, Flagler County has not established that it cannot be vicariously liable for the negligence of correctional officers.

Alternatively, Flagler County argues that it is entitled to sovereign immunity because "[t]he County's decision not to implement the [camera] upgrade is precisely the sort of planning-level decision that Florida affords sovereign immunity to governmental defendants." (Doc. 97 at 12). However, DeSimone does not allege negligence based on the design or upgrade of the

cameras. The only mention of cameras in Count X is that Jail employees failed to monitor the cameras for blind spots and report those blind spots to their superiors. (Doc. 41 ¶ 126). Flagler County does not address this part of the Amended Complaint.

To the extent Flagler County asserts it is entitled to sovereign immunity on the vicarious liability negligence claim, its argument is without merit. "[U]nder Florida law, a county's treatment of an individual inmate in its custody is an operational function, for which the State of Florida has waived governmental immunity." Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., 402 F.3d 1092, 1119 n.13 (11th Cir. 2005).

Accordingly, Flagler County is not entitled to summary judgment on the claim against it in Count X.

**2. Staly**

Staly cites Spann v. State, Department of Corrections, 421 So. 2d 1090, 1092 (Fla. 4th DCA 1982), to assert that "there is a duty to protect a prisoner from injuries caused by a third party. . . only if there is knowledge of the danger or at least a reason to anticipate the danger." (Doc. 94 at 24). However, this is not exactly what Spann says. Rather, Spann provides that "[a] jailer must exercise reasonable and ordinary care and diligence to prevent unlawful injury to a

37

prisoner placed in his custody, but he cannot be charged with negligence in failing to prevent what he could not reasonably anticipate." Spann, 421 So. 2d at 1092 (quoting 60 AM. JUR. 2D Penal & Correctional Institutions § 23). Thus, "[i]t is clear that corrections officers have a duty to use reasonable care to insure [sic] the safety of inmates during their incarceration." Ferguson v. Perry, 593 So. 2d 273, 277 (Fla. 5th DCA 1992). However, "[t]o find that a custodian breached the duty of reasonable care, a plaintiff must show the injury to have been a reasonably foreseeable consequence of the custodian's negligence." Dep't of Health & Rehab. Servs. v. Whaley, 574 So. 2d 100, 103-04 (Fla. 1991).

Staly seems to argue that he did not owe DeSimone a duty because he did not have any knowledge of the danger presented by Gilyard, Vazquez, or Vitale. (Doc. 94 at 24). This argument is without merit for two reasons. First, Staly, as Sheriff of Flagler County, did owe DeSimone a duty while she was incarcerated at the Flagler County Jail. See Ferguson, 593 So. 2d at 277. Second, Count X is not about what Staly knew. It is about Staly's vicarious liability for the negligence of the correctional officers. Staly does not demonstrate that there are no genuine issues of material fact on Count X because Staly does not address the negligence of the correctional officers at all.

Accordingly, Staly is not entitled to summary judgment on Count X.

## V.   CONCLUSION

Accordingly, it is

**ORDERED:**

1.   Flagler County's Motion for Summary Judgment (Doc. 97) is **DENIED** as to Counts IV and X.

2.   Flagler County's Motion for Summary Judgment (Doc. 97) is **GRANTED** as to Counts VIII and IX.

3.   Staly's Motion for Summary Judgment (Doc. 94) is **DENIED** as to Counts IV and X.

4.   Staly's Motion for Summary Judgment (Doc. 94) is **GRANTED** as to Counts VIII and IX

5.   Cole's Motion for Summary Judgment (Doc. 95) is **GRANTED** on all Counts.

6.   Quintieri's Motion for Summary Judgment (Doc. 96) is **GRANTED** on all Counts.

7.   Defendants Cole and Quintieri are **DISMISSED** from this action. The Clerk shall terminate these individuals as Defendants but withhold entry of judgment until the case concludes.

8.   Before the Court sets the case for trial, the parties shall confer in

good faith regarding the possibility of settlement. **By August 22, 2023**, they shall jointly notify the Court whether they have settled this case, and if not, whether they wish to have this case referred to a United States Magistrate Judge for a settlement conference.

**DONE AND ORDERED** at Jacksonville, Florida, this 17th day of July, 2023.



TIMOTHY J. CORRIGAN
United States District Judge

hkf
Copies:
Counsel of record